I respectfully dissent.
In DePugh, et al. v. Merillat Industries, Inc. (June 25, 1998), Jackson App. No. 97CA801, unreported (Abele dissenting), this court reviewed and reversed the trial court's summary judgment in favor of Merillat Industries (Merillat). I, however, dissented. I concluded, after a review of the summary judgment evidentiary materials, that Merillat did not owe a duty to the independent contractor's employees.
After our reversal and remand, the jury returned a verdict and a damage award in favor of DePugh and Shoults. After my review of the record, I again conclude that Merillat owed no duty of care to the independent contractor' employees.
The record reveals that Merillat, a cabinet manufacturer, experienced electrical problems and called S.O.S. Electrical Contractor, an independent contractor, to provide emergency electrical repair service. DePugh and Shoults, journeymen electricians employed by S.O.S., responded to the call and began to install a new wire to connect the main 480 volt electrical panel to an outbuilding. No one disputes the fact that Merillat hired the independent contractor to perform inherently dangerous work.
In Sopkovich v. Ohio Edison Co. (1998), 81 Ohio St.3d 628,693 N.E.2d 233, the Ohio Supreme Court spoke to situations in which a property owner may owe a duty of care to an independent contractor's employee performing inherently dangerous work. Michael J. Lexie, an independent contractor's employee, received severe injuries while painting an electric substation owned and operated by Ohio Edison. The court noted that Ohio Edison did not participate in the independent contractor's actual work activities. Nevertheless, the court held that regardless of Ohio Edison's lack of active participation in the job activities, Ohio Edison owed Lexie a duty of care because Ohio Edison retained and exercised control over a "critical aspect of Lexie's working environment." The court wrote:
"There is no question that painting a partially de-energized substation is inherently dangerous and, in this case, Morakis and Lexie were aware of the dangers associated with that work. Additionally, the evidentiary materials clearly demonstrate that Ohio Edison did not participate in the actual work activities of the independent contractor. Ohio Edison did not direct or control any of the work activities of Morakis Sons or the job activities of the individual painters. At most, Ohio Edison's representative at the site exercised a general supervisory role over the painting project to ensure that the painting work was properly completed. Edison's employee had virtually no contact with the painting crew except to inform them of the location of the activated and de-activated lines. Moreover, Ohio Edison neither granted nor denied permission with respect to any aspect of the job activities of the independent contractor. Ohio Edison did, however, retain and exercise exclusive control over a critical variable in the working environment, i.e. the de-activation of specific electrical conductors in the work area. In this regard, the court of appeals concluded that a question remained as to whether Ohio Edison owed a duty of care to Lexie stemming from Ohio Edison's retention and exercise of such control. We agree with the court of appeals' analysis of the issue. Specifically, we believe that the evidence in this case supports a finding of active participation and, thus, a duty extending from Ohio Edison to Lexie based upon Ohio Edison's retention and exercise of control over a critical aspect of Lexie's working environment. This is so regardless of the fact that Ohio Edison did not actively participate in the specific job activities of the independent contractor's employees." Id., 81 Ohio St.3d 628, 643, 693 N.E.2d 233, 244.
Thus, because Ohio Edison retained and exercised control over a critical aspect of the work environment (the de-activation of certain electrical conductors), the court held that a duty extends from Ohio Edison to the independent contractor's employee.
It is important to note, however, that the Sopkovich court further discussed and limited Ohio Edison's duty as follows:
"We emphasize, however, that any duty Ohio Edison may have owed to Lexie is not absolute. The reason, of course, is that Ohio Edison's participation in this case was clearly limited to the tasks of de-electrification of certain conductors in the work area and the dissemination of correct information concerning which conductors were energized and which had been de-activated. Therefore, as the court of appeals correctly recognized, Ohio Edison's liability (if any) may only be predicated on a breach of a specific duty that Ohio Edison undertook to perform, i.e., the tasks of de-electrification and communication. Accordingly, if Ohio Edison properly de-activated the conductors it had promised to de-activate, and accurately communicated with Morakis and the painters as to which conductors were activated and which were not, Ohio Edison would have discharged any duty of care owed to Lexie. Conversely, if Ohio Edison failed to de-activate the conductors it had promised to de-activate, or misinformed Morakis or Lexie as to which conductors were de-activated, liability could attach for Ohio Edison's failure to properly discharge a specific duty it had undertaken to perform, assuming that such failure was the proximate cause of Lexie's injuries." Id.,81 Ohio St.3d 628, 643, 693 N.E.2d 233, 244.
Thus, the court limited Ohio Edison's duty by noting that Ohio Edison's liability could only be predicated on a "breach of a specific duty that Ohio Edison undertook to perform." The court noted that if Ohio Edison had performed according to its promise (to de-activate certain conductors and to correctly communicate that information to the independent contractor's employees), Ohio Edison would have discharged any duty of care owed to Lexie and that no liability would attach.
In the case sub judice, I believe that, as a matter of law, Merillat owed no duty of care to DePugh and Shoults. The evidence reveals that Merillat's refusal to shut off the electrical power to the plant did not create a duty emanating from Merillat's "retention and exercise of control over a critical aspect" of the work environment.
Both electricians (appellees) testified that they work on hot 480 volt switch gear and there is usually no problem as long as they don't touch anything near it. When informed that Merillat did not wish to shut off the electrical supply, the electricians decided that they would go ahead and do the job. Both men testified that they would not have done the job if they believed that the job was unsafe and that the main reason for their request to shut off the electricity was to work faster. Moreover, both men were aware of the conduit's proximity to the hot board and to the presence of sawdust in the immediate area. Obviously, both men had full knowledge of the conditions and the consequent dangers associated with Merillat's refusal to shut off the electrical power.
I again express my great sympathy for both DePugh and Shoults. I find no evidence, however, to indicate: (1) that Merillat actively participated in the manner in which DePugh and Shoults performed their work; or (2) that Merillat retained and exercised control over a critical aspect of the work environment. Certainly, Merillat's refusal to shut off the electrical power constitutes control over an aspect of the work environment. The evidence in this case, however, must result in the conclusion that Merillat's decision did not constitute control over acritical aspect of the work environment. It is difficult for me to conclude that the electricity shut off decision constituted control over a critical aspect of the work environment when the electricians themselves, operating with full knowledge of the work environment conditions, did not draw a similar conclusion.
Furthermore, I note that in the instant case Merillat did not undertake any specific duty, and then fail to perform in accordance with its promise. Unlike Ohio Edison in Sopkovich, at no time did Merillat promise to shut off certain electrical conductors nor did Merillat breach any promises made to DePugh and Shoults.
I recognize that precisely what actions may constitute a property owner's control over a "critical aspect" of a work environment will depend upon the unique facts and circumstances present in each case. After my review of the unique facts and circumstances present in the instant case, I must again conclude that Merillat owed no duty of care to DePugh and Shoults. Thus, I would reverse the trial court's judgment.